# RUTLAND COUNTY.

## February Term, 1840.

---

Present, Hon. CHARLES K. WILLIAMS, *Chief Justice.*
    "    STEPHEN ROYCE,       )
    "    JACOB COLLAMER,      } *Assistant Justices.*
    "    MILO L. BENNETT,     )

---

## Rufus Richardson *v.* Joseph Anthony.

The defendant, being the owner of cattle, found them in the possession of the plaintiff. The plaintiff forbade the defendant to enter upon the plaintiff's land, and no evidence was given to show how the cattle escaped from the defendant, or how they came into the possession of the plaintiff. Held, that the defendant might enter upon the plaintiff's land and take the cattle, if he could do so peaceably.

Trespass, in two counts, the first for breaking and entering the plaintiff's close, and the second for seizing and taking away two heifers.

Plea, not guilty, with notice that the defendant would give in evidence, upon the trial, that the said heifers were his property, at the time of entering said close and were then in said close, and that he entered for the purpose of taking them away, as he lawfully might, doing no damage to the plaintiff, which was the same trespass complained of in the first count, and that at all other times when the defendant

entered the plaintiff's close, he did so by the license and permission of the plaintiff, and did no damage while in said close.. Issue was joined to the country.

Upon the trial in the court below, the plaintiff introduced evidence tending to prove that he expressly forbade the defendant's entering upon his premises, and, that after being so forbidden, the defendant, at several times, did enter the close of the plaintiff before he took the heifers, and that, on the night of the twenty eighth of October, 1836, the defendant entered the close of the plaintiff and took away the heifers. It was admitted, by the defendant, on the trial, that the heifers had been in the possession of the plaintiff for about one year before the defendant took them, and that the defendant had claimed them as his own, and this was known to the plaintiff before he forbade the defendant's entering as afore-'said. The plaintiff contended, and requested the court to charge the jury, that if they should believe that the heifers were the property of the defendant, yet, the defendant would not have a right to enter the plaintiff's close to take them away, after they had remained nearly a year in the possession of the plaintiff, and the defendant had been forbidden to enter the plaintiff's premises. But the court decided, and so instructed the jury, that if they found that, at the time the defendant entered the plaintiff's close and took away the heifers, he was the owner of the heifers, and entered the plaintiff's close only to take them away, and did no other damage, notwithstanding they had been in the possession of the plaintiff one year, and notwithstanding the plaintiff had forbidden the entry, the defendant would be fully justified in so doing, but would not be justified in entering at any other time, or for any other purpose. The jury returned a verdict for the defendant, and the plaintiff excepted to the decision and charge of the court.

*R. Pierpoint,* for plaintiff, contended,

That the owner of goods or cattle cannot be justified in entering the close of another, to take them away, unless the same were feloniously stolen, or were *wrongfully* taken from the possession of the owner by the *owner of the close,* and placed there, or were *so* taken and deposited by a third person, with the knowledge and assent of the owner of the close ;—

That, if the cattle had been taken by force from the pos- <span style="float:right">RUTLAND,<br>*February,*<br>1840.</span>
session of the defendant, and placed in the plaintiff's close,
without his knowledge or assent, or had been placed in the <span style="float:right">Richardson</span>
close by the defendant himself, or had been taken up as <span style="float:right">*v.*</span>
estrays, the defendant had no right to break and enter the <span style="float:right">Anthony.</span>
·close to take them away ;—

꞉ That the case does not show, and there is no intimation in
the plea or notice, how or by what means the cattle came in-
to plaintiff's close, much less that they came there through
the wrong act of the plaintiff, and that, unless it did so ap-
pear, the plaintiff was entitled to a verdict on the first count
in his declaration, and cited 3 Bl. Com. 4. 1 Swift's Dig.
462. 6 Johns. R. 5. 1 Swift's Dig. 515. 2 Roll's R. 55.
20 Viner's Ab. 508. Cro. Eliz. 246.

*C. Linsley and E. A Ormsbee,* for defendant.

Much nicety, at one time, prevailed on the subject of jus-
tifying an entry on another's land: but the only rational princi-
ple that can be extracted from all the authorities, seems to be,
that the law will justify an entry on another's land, (doing no
damage) whenever it becomes necessary for the preservation
or prosecution of any of the just rights of the party making
the entry. Perhaps it is not going too far to say, that the
law will tolerate any entry made for a reasonable purpose,
when no damage is sustained, such as to succor a man or ani-
mal in distress—to extinguish a fire—to demand rent, or pay-
ment—to gather fruit or take timber fallen on his neighbor's
land. 6 Bac. Ab. 521. 3 Bl. Com. 210. 1 Term. R. 338.

The opinion of the court was delivered by

WILLIAMS, Ch. J.—From the request made to the court to
instruct the jury, it would appear that some importance was
attached to the time during which the cattle were in the pos-
session of the plaintiff. The *time* during which they remain-
ed in the plaintiff's possession is of no importance. The
manner in which they came there was of more consequence.
The right of the owner of personal chattels to enter on the
possession of another to reclaim property, may depend entire-
ly on the manner in which the possession was obtained. The
controversy between these parties, was, as to the ownership
of the cattle, and probably neither of them supposed that
the decision of the suit would depend on the enquiry,

whether a technical trespass was committed by the entry on the land of the plaintiff. The enquiry now is, whether, from the facts, as set forth in the case, the court, in answer to the request of the plaintiff, gave erroneous instructions to the jury. It appears to be well established, that if one man takes the goods of another and puts them on his own land, the owner may enter and take them, and, also, that if a stranger, by wrong, takes the cattle of another and puts them upon the land of a third person, by his assent, the owner may enter and retake them. This was the doctrine of the case of *Chapman v. Thumblethorp*, Cro Eliz. 329, in which it was contended the owner would not be justified in entering into the plaintiff's close to take out cattle, unless they were put there by the plaintiff's tort. The court held, that when the defendant's beasts are taken from him, *by wrong*, and are not out of his possession by his own delivery, he may justify the taking of them in any place where he may find them. Mr. Hammond, in his treatise on the law of *nisi prius*, p. 153, lays down the proposition, generally, that the proprietor of goods and chattels has authority, by law, to enter the land of another upon which they are placed, and remove them, provided they are there without his default. Possibly this proposition may be laid down more extensively than the authorities will warrant, though it appears to me that he is sustained by the current of authorities. It never has been questioned but that if the goods of one are in the possession of another, without any fault of the owner, and by the *wrongful act* of the person in possession, the owner may reclaim them; and this, in my opinion, is decisive of the case before us. The heifers were the property of the defendant. This is established by the verdict of the jury. No evidence is given in what manner they escaped from his possession, nor is there any evidence how they came into the possession of the plaintiff, so that no fault is attributable to either party so far. The plaintiff did not claim to retain them as estrays, but claimed to own them, and forbade the defendant to enter his premises. After knowing the defendant's claim to the cattle, and as the plaintiff was not and could not be the owner of them, if the verdict of the jury is right, his keeping them in his possession for a long time and setting the owner at defiance and forbidding him to enter his premises, though it

might be to examine or reclaim his property, was a wrongful act of the plaintiff, and the cattle remained and were in his enclosure, at the time they were taken, by his own wrong.

The case of *Taylor* v. *Fisher*, Cro. Eliz. 246, relied on by the plaintiff's counsel, will be found not to militate against the principles before mentioned. In that case, the defendant relied upon a license from the plaintiff's wife to enter and take the goods, without stating how they came into his possession, and the license failing, for want of authority in the wife to grant it, the justification failed. It is to be observed that the goods, claimed by the defendant, in that case, were in the house of the plaintiff, at the time the defendant purchased them, and inasmuch as the defendant did not set forth, in his plea, how they came there, or whether it was without fault of the owner, the plea was ill.

It was urged, in the argument, and a passage was read from Blackstone's Commentaries, and another from Swift's Digest, in support of the proposition, that a person cannot enter the grounds of a third person to retake property, unless it is feloniously stolen. The case from Roll's Reports, on which these dictums are founded, make this distinction, that, if property is feloniously stolen, the owner may pursue and take it wherever it is found, although the person in whose custody it is found, never consented to its being placed there. But, if it is taken, not feloniously, and put upon the land or enclosure of another, against his will and without his consent, he shall not be exposed to another trespass by the owner of the property. A distinction was made between a felony and a trespass, probably, because the owner of the cattle had no remedy against the felon, but had against the trepasser. But, in the latter case, if he consented to have the goods put into his possession, the right of the owner to enter and retake them was recognized, and I have already remarked that the claim of property, by the present plaintiff, and his retaining the cattle after notice of the defendant's right, was equivalent to a consent to receive the cattle from a wrong doer in the first place, or, at any rate, made the plaintiff himself a wrong doer. Judge Swift, in his Digest, recognizes this right of the owner to enter the land of another and take his goods, not only when they are stolen, but, also, when they are put

there by the owner of the land, or by a stranger with his consent. In the case of *Heermance* v. *Verney*, 6 Johns. R. 5, relied on by the plaintiff's counsel, the defendant showed no title to the personal property, his witnesses being rejected as incompetent. What would have been the decision as to the entry, under different circumstances, we do not know. The case of *Blake* v. *Jerome*, 14 Johns. R. 406, came before the court upon *certiorari*. The court intimated that the entry on the land was a trespass, but the ground of their affirming the judgment, was, that the evidence, as to the ownership of the property, was so questionable that the judgment should not be disturbed. In neither of the cases was there any plea of justification, though, in the latter, there was a notice of justification as to the personal property, only. The court might be warranted in saying that the action was technically supported, as no plea justified the trespass. In neither of the cases, does it appear to have been investigated or decided under what circumstances the owner of personal property may enter the land of another to take it, nor can they be considered as decisions on the question now before us. In the absence of any testimony as to the manner in which the heifers in question came into the enclosure of the plaintiff, when it may as well be presumed that they came there with his consent and without any neglect of the defendant, as the contrary, and when they were evidently detained by him under a wrongful claim, we consider the defendant was justified in entering the enclosure to take his own property, and the fact of his having entered at any other time, or for any other purpose, is negatived by the verdict of the jury. The question as to breaking and entering the close, was, comparatively, of small importance in the case, and neither party prepared the case with a view to that alone. Nor could the plaintiff admit the ownership of the cattle, and contend that they were in his possession without his consent and by the tort of the defendant, without abandoning the real subject in dispute. The judgment of the county court is therefore affirmed.

BENNETT, J.—Dissenting.

I cannot but think that the charge of the court below, to the jury, was incorrect, as applied to the facts of this case.

There was no evidence in the case, showing by what means the heifers went out of the possession of the defendant, or how they came upon the premises of the plaintiff; but it was, on trial, admitted by the defendant, that they had been in the possession of the plaintiff about one year, when he entered the plaintiff's close and drove them away. Can the defendant, upon such a state of facts, justify the breaking of the plaintiff's close to regain the possession of the cattle ? I think not. It is undoubtedly true, that if A., by wrong, takes the goods of B. and puts them upon his own land, A. may justify an entry upon the close of B. to retake them. So if, in such case, A. were to put them on the lands of a third person, by his consent, the owner might enter to reclaim them. The landholder would become a *particeps* in the wrong. But that is not this case. The defendant undertakes to justify what would otherwise be a trespass. And if he pleads specially, his plea must set forth all the facts necessary to constitute a justification. And if he gives notice, under the general issue, his notice must contain all the material facts necessary to constitute a legal justification, and those facts must be proved on trial. Neither the facts contained in the notice, nor those proved on trial, to my mind, constitute any justification. It is well settled, if goods have been *feloniously* stolen from the owner and carried away, the owner may pursue and retake them on whosesoever land they may be found, whether placed there by the consent of the landholder or not.

But no such fact is avered in the notice, nor pretended to have existed, on trial. In the case of *Higgins* v. *Andrews*, 20 Viner. 506, it was held, upon demurrer, that if certain persons unknown, in a felonious manner, eradicate and pull up the fruit trees of A., in his garden, and carry them upon the premises of B., the owner cannot justify an entry to reclaim them. This was, of course, but a trespass upon the owner of the fruit trees. The doctrine is well settled, if A. takes my horse, but not feloniously, and put him on the land of B., it is not lawful for me to enter upon the land and take him. 20 Viner. 506.

In *Taylor* v. *Fisher*, Cro. Eliz. 246, the defendant had bought the goods of one J. B., who was the owner of them,

the goods then being in the house of the plaintiff, and thereupon the defendant went to the house of the plaintiff and demanded the goods, and the plaintiff being absent from home, by the license of his wife, the defendant entered the house and took and carried away the goods, and yet he was held a trespasser for such entry. The court say, the goods being in the plaintiff's house, and it *not appearing* how they came there, *whether by trespass or otherwise*, he can not, of his own head, enter, and the license of the wife to enter her husband's house was void. This, then, is a direct adjudication, that, in such case, the *law* gives no right of entry to the owner of the goods. If it did, though the license, in fact, failed for the want of authority in the wife, yet, in that court, this would have been surplusage in the plea, and the plea would have been held sufficient. Gowdy, J. it is true, says, it may be *intended* the goods were there by the plaintiff's *license* and then the defendant might well enter and take them, but, to this, the other judges did not concede, and it was adjudged for the plaintiff.

For aught that appears, these heifers were upon the premises of the plaintiff, through the default of the defendant. The parties may have owned adjoining lands and the defendant may have suffered that portion of the fence, which he was bound to have repaired, to have gone to decay, over which they may have escaped upon the lands of the plaintiff, and, in such case, he could not justify an entry to drive them off. So if they escaped and came into the lands of the plaintiff, through the insufficiency of the fence which he was bound to repair, though the defendant might enter and retake them immediately after the escape, yet, if he suffered them to remain, after notice, they were then *there* through his default and he could not enter to retake them. They might be distrained damage feasant. This is settled law. Ham. N. P. 169. 2 Saund. R. 285, n. 4. 4 Comyn's D. Pl. 3. (m. 29.) *Edwards* v. *Halinder*, 2 Leon. 93.

In this case, the defendant admitted the heifers had been upon the premises of the plaintiff one year before he entered to retake them, and if with his knowledge, (and this was a fact which should have been submitted to the jury to have found,) upon well established principles, they were there, at the time of the entry, through the default of the defendant,

though they might have come into the premises, originally, through the plaintiff's default. Indeed, I think, in cases where property is stolen, the owner cannot justify the entry upon lands, wherever it may be found, to retake it, unless he uses reasonable diligence in pursuing and retaking it. In the present case, there is no evidence that the heifers went into the possession of the plaintiff through any default of his, and this we cannot presume in order to make out a justification for the defendant. It must be averred and proved by him, and, upon the authority of *Taylor* v. *Fisher*, it cannot be *intended* that they were put there by the license of the plaintiff. The case of *Hermance* v. *Verney*, 6 Johns. R. 5, was, trespass for entering the plaintiff's close and breaking down and destroying his bark mill, &c. The plea, it is true, appears to have been only the general issue, and the defendant claimed title in the bark mill, &c., as personal property. The defendant failed, in the court below, to prove his ownership in the personal property, his witnesses being adjudged incompetent. The court say, " the entry upon the lands of the plaintiff was, at all events, a trespass, and if the defendant showed no title to the mill-stone, the taking it away was a substantial injury, which well warranted the verdict." *Blake* v. *Jerome*, 14 Johns. R. 406, in error, on *certiorari* from a justice's court, was this. The action was tresspass for entering the plaintiff's field and taking away a mare and colt. The defendant pleaded the general issue, and gave notice that the mare and colt were his property, as appears from the report. The mare and colt were taken out of the plaintiff's field, under the direction of the defendant, after he had demanded them and their delivery had been refused, and after he had been forbidden to take them. The evidence, as to their ownership, was conflicting.

The court say, " the evidence, as to the right to the mare and colt, may be somewhat questionable, but the defendant below, *was, at all events, guilty of a trespass in sending a person on the land of the plaintiff to take them away.* The action was, therefore, technically supported, and where the evidence as to the true ownership of the property is so nearly balanced, the judgment ought not to be disturbed." It is true, in neither of these cases does there appear to have been a plea, or a notice, justifying the entry upon the close of the plaintiff, and whether, by the practice of the state of

Rutland, February, 1840.

Richardson v. Anthony.

New York, a special plea in such case is required, before a justice's court, I am not advised. The report of each case is short, and I should not be surprised if it should be found, in the latter case, that the notice, in fact, went to justify the entry by the defendant to take the mare and colt as his property. So far as the personal property was concerned, there was no possible occasion for any special plea or notice. At all events, there does not seem to have been any embarrassment in the defendant's rights from want of proper pleadings.

In the latter case, the justice gave judgment for the plaintiff to recover the value of the mare and colt, and on the case coming before the supreme court, on the *certiorari*, they say, in substance, that the true ownership of the mare and colt is questionable, from the evidence, but inasmuch as the defendant below was, at all events, guilty of a trespass in sending a person on the lands of the plaintiff to take them away, the judgment ought not to be disturbed. This adjudication, I conceive, proceeds on the direct ground that the defendant could not have justified the entry, though it had been found that he was the owner of the mare and colt. Though these cases do not appear to have received a full investigation, yet, the court was of great respectability, and have, I think, laid down the law as it is well established by authority. It does not, as I have before said, appear, that the cattle in question came on the premises of the plaintiff by his default or consent. It may have been *lawfully*, and we are not to presume the contrary.

If the defendant claims to justify the entry, on this ground, it was for him to *aver* and prove the manner in which the plaintiff's possession of the cattle commenced. Until this is done, the case is to stand on the ground that it was through the default of the defendant. The question, whether the defendant's having subsequently claimed these heifers as his own, and this being known to the plaintiff before he forbade him to enter on his premises, can place the plaintiff on the same ground as if he had been *originally* in the wrong, and justify the entry, may be worthy of some consideration.

The principle which allows the party injured to redress himself, upon his mere motion, by a recaption of the property,

is, at best, a delicate one and ought not to be extended. It was founded upon a supposed necessity, as it might sometimes be the case that the owner would have no other opportunity of doing himself justice. Its tendency is, to the use of private force, as a means for the redress of private injuries, and to enable the strong to give law to the weak. Its genius is insubordination and it fattens in the blood of social justice. The history of our country furnishes too many lamentable illustrations of the baneful tendency of the principle of allowing, in any case, an injured man to take redress into his own hands. In the case of an ouster of the *freehold*, the right of re-entry is confined to those cases in which the *entry* of the tenant, *ab initio*, as well as the *continuance* of his possession, afterwards, is *unlawful*. 3 Bl Com. 171. If the entry of the tenant, was, at first, lawful, and the *ouster* consisted in the *wrongful* detention of the possession afterwards, the law gives no right of redress to the person injured, by a re-entry. The claimant must be put to his action. 3 Bl. Com. 175, If, then, there is no redress by a re-entry, where the eviction arises from a wrongful detention of the possession, simply, it would seem, by parity of reason, that there should be no right of recaption as to personal property, where the injury lies in an unlawful detention, and not, *ab initio*, in wrong. A tenant for years cannot, after his term has expired, enter to remove his goods from the premises. His only remedy, in such case, is, to demand them, tendering at the same time sufficient amends for any damage which they may have occasioned, and if the landholder then refuses to give them up, the owner may have his action of trover or detinue for such wrongful detention.

There is no case, which, under such circumstances, justifies an entry upon the premises to seize the goods.

In Br. Trespass, Pl. 213 and 20 Viner, 507, Pl. 17, we have this case. If A.'s beasts are in another's land, *damage feasant*, he cannot justify an entry to drive them off.

The reason is, it would defeat the landholder of his right of distress. All that we learn from the case now before us, is, that the defendant claimed to own the cattle and the plaintiff was apprized of this claim before he forbade his entry upon his premises, (probably, by a fair construction of the case,

RUTLAND.
*February*,
1840.

Richardson
*v.*
Anthony.

to take them.)    Why the plaintiff forbade his entry or detained the cattle does not appear.    He had, at least, a *prima facie* right to distrain them *damage feasant,* and the defendant cannot justify an entry on the plaintiff's premises to defeat him of this apparent right.    Until, at least, there was a tender of sufficient amends for any damage done by them, the plaintiff was not, *prima facie,* guilty of a wrongful detention.    But suppose he had been, the defendant must have been put to his action.    I am aware of no case, like the one before us, in which an entry upon the lands of the person in possession of property,    which begins in right, to retake it, has been justified.    Certainly we have been referred to none, showing that a *subsequent* unlawful detention of property is equivalent to an *original* wrongful possession,    as it respects the right of· recaption.    The rule is otherwise as to lands.    As this right, in all cases, is founded upon a supposed necessity, I think there is good reason why there should be a different rule in the two cases.    When the original possession was lawful, an *apparent* right of possession was thereby gained and the law does not and ought not, as I think, to suffer that right to be  overthrown by the mere act of the party, upon his  setting up a  subsequent *unlawful detainer* of the  property.    I therefore should advise a reversal of the judgment of the county court.