CLARENCE M. RAWITZER v. ST. PAUL CITY RAILWAY COMPANY.[1]

July 22, 1904.

Nos. 13,933—(169).

**Negligence—Contributory Negligence.**

A cyclist was negligently riding on the tracks of defendant, absorbed in an occupation which distracted his attention from an approaching street car, running at a high and unlawful rate of speed, whereby he was in danger of being run upon. *Held,* under facts tending to show that the motorman in control of the car should have known that the rider would remain on the tracks, and would not appreciate his danger, that it was the duty of such motorman to avoid running upon the cyclist; and whether he could have done so by the exercise of ordinary care should have been submitted to the jury.

**Wanton Negligence.**

The negligence of one person, whereby he is placed in a perilous situation, does not excuse a reckless disregard of his safety by another. Under such conditions a trespasser, even, is entitled to protection from wanton or wilful acts; and when the danger he has incurred is apparent the duty exists to exercise ordinary care to avoid injuring him.

Action in the district court for Ramsey county by plaintiff as administrator of the estate of Harry Jacobs, deceased, to recover $5,000 for the death of deceased. The case was tried before Jaggard, J., who directed a verdict in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Reversed.

*Welch, Hayne & Hubachek* and *Jones & Jones,* for appellant.

*Munn & Thygeson,* for respondent.

[1] Reported in 100 N. W. 664.

LOVELY, J.

Plaintiff, as administrator of Harry Jacobs, brings this action to recover damages for the alleged wrongful act of defendant, charged with recklessly running one of its street cars upon him, causing his death. The trial court, at the close of the evidence, directed a verdict for defendant. There was a motion for a new trial, which was denied. Plaintiff appeals.

An examination of the record would justify the following inferences of fact in favor of the plaintiff, to which on this review he must have the benefit: Defendant operated its Interurban cars over double tracks on University avenue, one of the public thoroughfares of St. Paul, on October 1, 1903. About the hour of four o'clock in the afternoon of that day, the deceased, a youth of seventeen years, who was riding a bicycle, turned into the avenue, and moved westerly a short distance on the northerly car track, between the rails. He was followed from the rear by one of defendant's cars, when, to avoid it, he turned into the space between the tracks; then went directly upon the southerly track, to allow this car to pass, which it did. At the same instant he took from his pocket a bundle of papers, consisting of bills, which he was collecting for his father. He continued on the southerly track, guiding his bicycle with his right hand, and holding the papers in the left, bending forward over the seat at the same time and examining them attentively, apparently oblivious of the fact that a car was coming towards him on the same track from the west, behind time, running on a downgrade at a high rate of speed, estimated by witnesses at from twenty five to thirty miles an hour, or twelve miles faster than permitted by the ordinances of the city. The evidence also tends to show that the motorman on this car was at his place, in control. The car was supplied with the usual appliances for stopping it, and had a gong for the purpose of giving warning; but the evidence also shows the motorman gave no signals of danger, although the view was unobstructed, and he was at his place, looking forward, where he could easily see the deceased. It reasonably appears that the boy himself was not aware of his peril until the instant before the car reached him, when he lifted his head, discovered his danger, and made an effort to get from the track, which was unavailing. He was struck, thrown into the air by the collision, hurled to the ground, and killed. The car was then stopped, but not until it

had run two hundred feet from the place of the accident. The motorman and car starters were put on the stand by the defendant, but did not testify as to the failure to give warnings or signals.

The inference in favor of plaintiff's claim that the accident occurred through the reckless conduct of the motorman is stated strongly, as is necessary on a review of the evidence directing a verdict against him. What the jury would have found cannot be determined, since they were not allowed to pass upon the facts.

The learned trial court was of the opinion that plaintiff's intestate was guilty of contributory negligence in occupying defendant's tracks and remaining thereon without looking forward to discover danger, and it may well be conceded that this was so. It may also be conceded, further, that if the deceased was on the tracks, apparently observing the course he was pursuing, the motorman would have a right to presume that he would leave the same before the car reached him, acting upon the ordinary instincts of self-preservation usually adopted under such circumstances. But the apparent absorption of the deceased in his occupation reading the papers in his hand, and his inattention to what was occurring around him, obvious to several witnesses, does not seem to have impressed the motorman, or to have been acted upon by him, for he pushed ahead without making any effort to warn the unfortunate youth of the danger which he did not appreciate; and we are not at liberty to hold under such conditions that, even though deceased was himself at fault in the course he pursued in remaining and riding on the track, his negligence in this respect justified a disregard of the duty by the motorman to avoid wilful recklessness or wantonly inflicting injury upon him because he failed to exercise proper care for his own safety.

It is insisted on behalf of defendant that the most that can be said in behalf of plaintiff is that both the deceased and the motorman were guilty of negligence concurring in the accident which caused intestate his life. Were it clear under the evidence that the negligence of intestate and that of the motorman concurred at all times until the fatal disaster happened, so that, in a legal sense, the fault of defendant's servant was not the proximate cause of the accident, the direction of the trial court would have to be supported under the well-settled doctrine of this court. Gagne v. Minneapolis St. Ry. Co., 77 Minn. 171, 79 N. W. 671; Olson v. Northern Pac. Ry. Co., 84 Minn. 258, 87 N. W.

843; Baly v. St. Paul City Ry. Co., 90 Minn. 39, 95 N. W. 757. But under the evidence upon which the verdict was directed it was a question of fact whether or not, for a sufficient length of time previous to the collision, the apparent and manifest absorption of intestate in his occupation, whereby his attention was entirely distracted from the approaching car, was plainly observable to the motorman, and the probability that he would continue inattentive to the instincts of self-preservation and fail to leave the track was so clear as to require the exercise of greater prudence by the motorman than would have been due to him but for those conditions. In other words, whether, from the appearance of intestate, and the occupation in which he was engaged, it was doubtful if the motorman could indulge in the presumption that intestate would observe the ordinary rules of caution prevailing commonly among riders of bicycles or persons walking on the track in front of his car, and whether, in view of the situation, he should not have exercised greater caution from the apparent disregard by intestate of the ordinary duties which he owed to himself, and did not seem to appreciate.

A trespasser on a railroad track, who is unaware of danger, and is known to be in manifest peril by the person in control of an engine or street car, is not altogether remediless for the consequence of wanton and reckless injury after such peril is, or with reasonable prudence should be, discovered. This principle is founded upon the dictates of humanity, and is supported by great weight of authority. Inland & Seaboard Coasting Co. v. Tolson, 139 U. S. 551, 11 Sup. Ct. 653; Fonda v. St. Paul City Ry. Co., 71 Minn. 438, 74 N. W. 166; Sloniker v. Great Northern Ry. Co., 76 Minn. 306, 79 N. W. 168.

If, after the discovery of intestate's peril, and the probable continuance of it to an ultimate catastrophe, the motorman could have exercised reasonable care in avoiding the same, he should have done so; and this should have been submitted upon the record to the jury.

Order reversed, and new trial ordered.