JOSEPH McGILLIS v. DULUTH & NORTHERN MINNESOTA RAILWAY COMPANY.[1]

June 30, 1905.

Nos. 14,421—(190).

**Wanton Negligence.**

A state of fact which tends to show that ordinary care might be wanting on the part of two employees of a defendant railroad *held*, under the evidence, not sufficient to authorize a submission of the question of wanton negligence of such servants in occasioning the injuries and death of a brakeman from a collision with an engine.

[1] Reported in 104 N. W. 231.

Action in the district court for St. Louis county by plaintiff as administrator of the estate of Gillis McGillis, deceased, to recover $5,000 for the death of intestate. The case was tried before Cant, J., and a jury, which rendered a verdict in favor of plaintiff for $1,500. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed and new trial granted.

*Davis & Hollister,* for appellant.

*John Jenswold, Jr.,* for respondent.

LOVELY, J.

This is an action by an administrator to recover for the negligence of defendant, which it is claimed caused the death of a brakeman (Gillis McGillis) on a logging train in defendant's yards at Knife River, in this state. It was tried to a jury, who returned a general verdict in favor of plaintiff, finding specially that the death of intestate resulted from the negligence of Frank Kimball, engineer, and the fireman, Andrew Connelly, in the operation of a locomotive. There was a motion for a new trial or judgment in the alternative, which was overruled. This appeal is from that order.

Defendant's yards had four separate parallel tracks running east and west, called by numbers 1, 2, 3, 4. Between each of these tracks was a space of nine feet, on which logs occasionally fell. A train with cars was pulled into the yard. The locomotive in charge of Kimball was cut off on track No. 2, and ran northeasterly to a water tank at the end of the yard, a distance of thirty or forty car lengths. This engine remained at the tank some ten minutes, after which it backed down on another (lead) track to take on coal. While this engine was at the water tank, another train, on which intestate was head brakeman, came in on track No. 3. Its engine was cut off, pulled easterly, and then switched upon track No. 2, to be coupled to Kimball's train, to take out some cars therefrom, and then backed down to be coupled on intestate's train on track No. 3, so as to make up a full train. Intestate in the meantime followed the engine, as was his duty. Thereupon Kimball's tender and engine backed from the water tank with a brakeman on the footboards until it came to within ten or twelve

feet of a switch, where he stepped off. In backing this locomotive the engine passed the cars on intestate's train, who, being on the opposite side at the time, passed over the couplings and proceeded towards the track on which Kimball's engine was moving; the engineer being on the right side, his fireman on the left. The evidence indicates that intestate passed in front of the tender, which continued to move backward until it struck him, throwing him on the track, where he fell to the outside. The engine passed over him, intestate receiving such injuries that he died soon after.

The complaint in this action charged the defendant with negligence of the engineer and fireman in failing to ring a bell and observe precautions for the protection of intestate, and the evidence to support plaintiff's cause of action was directed to this issue. It may, for the purpose of this argument, be conceded that it was sufficient to require its submission to the jury upon the question whether intestate's fellow servants the fireman and engineer exercised due care; but we are required on this review, upon the exceptions that were taken, to consider an instruction of the learned trial court which authorized the jury to find in favor of the plaintiff if either the engineer or fireman failed to exercise a higher degree of duty than ordinary care.

The learned trial court, after having given instructions defining the duty of the defendant to exercise through its servants ordinary care for the protection of intestate, adds:

> There is one set of circumstances under which plaintiff may recover, although you may find that the deceased was negligent. If the engineer or fireman saw deceased going upon the track, and into a place of danger, and if, after seeing him in or going into such place of peril, they failed to exercise the proper degree of care—that is, ordinary care to prevent injuring him —and if such injuries could have been averted if such care had been taken, then plaintiff may recover, although deceased may have been himself negligent in going upon the track where he then was. You will determine, then, from the evidence, whether the engineer or fireman were negligent; whether, if they were, the deceased was injured by dangers the risk of which he assumed; whether the deceased was himself negligent;

and, if the deceased was negligent, whether the engineer or fireman saw him in a place of peril in time to have avoided such injury had they taken the proper degree of care.

The jury were thus told that if intestate was negligent he still might recover, providing the engineer and fireman, after discovering his peril, could have avoided injuring him.

In support of this instruction counsel for plaintiff relies upon a case in this court (Rawitzer v. St. Paul City Ry. Co., 93 Minn. 84, 100 N. W. 664) ; but an examination of the evidence leads us to the conclusion that the full force of the principle laid down in this case has not been appreciated by the learned trial court, for we are satisfied that the evidence in this case was not such as to charge the engineer or fireman with such wanton misconduct or disregard of duty as to justify the instruction which we have quoted above. The evidence tended to show that intestate, as well as other brakemen, were moving on the tracks at all times when engines had to pass thereon; that the discharge of the duties of these servants required this, with which custom intestate was familiar; and it is apparent that engineers operating their engines on the tracks could not but know that brakemen and yardmen would thus be upon the tracks, and would at times be presumably expected in the performance of their duty to exercise due care in protecting themselves to avoid collisions. It is much easier for an individual who is employed to make couplings, give signals, and do this work, to step out of the way of a train than it is for an engine to avoid being in his way. From this it would follow, as we have often held in other cases, that a person in charge of an engine might reasonably presume, in the absence of clear evidence to the contrary, that such servants would perform their duty, which was to avoid exposing themselves unnecessarily to danger. The principle laid down in the case of Rawitzer v. St. Paul City Ry. Co., supra, upon which plaintiff's counsel relies, was based upon facts which fully rebut the presumption which we think existed in this case, and might well have led the engineer and fireman to act thereon.

It would serve no useful purpose to review the evidence in detail which has led us to the conclusion that there were no wanton or wilful acts on the part of the fireman or engineer Kimball. Under the cir-

cumstances attending this injury the most that could be claimed would be that these servants did not fully appreciate intestate's danger when he was on the track before the tender. The evidence does not clearly indicate that these servants knew that intestate would remain there in peril. They might fairly presume from the facts disclosed that he, as well as other brakemen, in moving about from place to place, continually passing into places of danger and out of the same, would exercise care to protect themselves as was usual, and effect was required to be given to it; and we are satisfied from the evidence that it was error to permit the jury to find that intestate had not done so, which may have resulted in the verdict returned. In view of this instruction, which was improper under the evidence introduced in this case without reference to other questions urged, we are of the opinion that there must be a new trial.

Order appealed from is reversed and new trial granted.