## J. D. STANLEY v. JONAS R. PAYNE.

May Term, 1905.

Present: ROWELL, C. J., TYLER, START, WATSON, HASELTON, and POWERS, JJ.

Opinion filed December 7, 1905.

*Assault and Battery—Retaking Possession of Property—Justification.*

The mere right of property, not coupled with the possession, will not justify the owner in using force and violence to obtain possession from one who wrongfully withholds it.

The facts that defendant, on the expiration of his lease of a farm, obtained the landlord's permission to leave a certain box in the barn on the premises, and thereafter defendant visited the farm and told the then tenant that the box was defendant's and that

he entered to take it, and the tenant refused to allow him to do so, are not sufficient to place the tenant in the attitude of a wrong-doer so as to justify defendant in the use of force and violence to get possession of his box.

TRESPASS for assault and battery. Pleas, the general issue, self-defence, and defence of personal property. Replications, *similiter* and *de injuria.* Trial by jury at the September Term, 1903, Rutland County, *Munson, J.,* presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion fully states the case.

*Butler & Moloney* for the defendant.

The defendant was justified. The person entitled to the possession of a chattel may take it from a wrongdoer by force; and he will not be liable to a civil action therefor, provided he used no more force than was necessary. *Johnson* v. *Perry,* 56 Vt. 703; *Hodgden* v. *Hubbard,* 18 Vt. 504; *Richardson* v. *Anthony,* 12 Vt. 373; *Yale* v. *Seeley,* 15 Vt. 221; *Sturvesant* v. *Wilcox,* 31 Am. St. 580; *Com.* v. *Donohue,* 148 Mass. 529; *Barnes* v. *Martin,* 82 Am. Dec. 676; *White* v. *Twitchell,* 25 Vt. 620; *Sterling* v. *Worden,* 51 N. H. 217; *Hemingway* v. *Hemingway,* 58 Conn. 433.

*E. H. O'Brien* for the plaintiff.

The mere right of property will not justify the owner in the use of force and violence to obtain possession. *Bliss* v. *Johnson,* 73 N. Y. 529; *Parsons* v. *Brown,* 15 Barb. 594; *Sampson* v. *Henry,* 11 Pick. 387; *Churchill* v. *Hulbert,* 110 Mass. 42; *Dustin* v. *Cowdry,* 23 Vt. 631; *Mussey* v. *Scott,* 32 Vt. 82; *Bowman* v. *Brown,* 55 Vt. 184; *Johnson* v. *Perry,* 54, Vt. 459; *Drury* v. *Hervey,* 126 Mass. 519; Cooley on Torts, p. 50; Cyc. of Law and Procedure, vol. 3, p. 1078; *Hodgden* v. *Hubbard,* 18 Vt. 504.

TYLER, J.   Trespass for assault and battery; pleas, general issue, self-defence and defence of property; replication, *de injuria*.

The defendant had been a tenant of a certain farm, and it appeared that prior to April 1, 1902, when his term expired, he and one Pratt, the owner of the farm, agreed that a certain grain-box that belonged to the defendant should remain in the barn during that spring and that the defendant might remove it at any time after that season.   The plaintiff, who succeeded the defendant as tenant, knew nothing of this agreement nor of the defendant's ownership of the box beside what the defendant told him just before the assault.

In September, 1902, the defendant drove to the farm for his box, when an affray took place between him and the plaintiff of which they were the only witnesses, and their testimony concerning it materially differed.

The plaintiff testified that the defendant drove up and stopped in front of the barn doors and said there was a box in the barn that belonged to him, and that he was going in to get it; that the plaintiff told him not to go into the barn because the plaintiff did not know whether the box belonged to the defendant or to Pratt, that when Pratt came up the plaintiff would inquire, and if the box belonged to the defendant, the plaintiff would draw it down to him and they would have no trouble; that the defendant said, with an oath, that he should go into the barn; that the plaintiff went into the barn and the defendant followed; that the plaintiff then told the defendant to leave the box where it was until Pratt came in, and if it was the defendant's he should have it; that the defendant took hold of the box and started to draw it towards the barn door, and at the same time the plaintiff seized hold of the opposite side of it and pulled it backwards; that the defendant pulled it along and as he pulled it a little piece of it came off

which the defendant threw down and again took hold of the box; that the defendant pulled it along two-thirds of the way across the barn floor, when the plaintiff told the defendant that he was not going to pull it any further, but the defendant kept pulling it along, and the plaintiff said, "Now leave it alone," and then the defendant knocked him down and jumped upon him.

The defendant testified that upon coming into the barn he told the plaintiff that the box was his, that he had a right to it and that he proposed to take it, whereupon the plaintiff pulled it back and broke a board off of it, and that the defendant continued to draw it toward the door; that the plaintiff then assaulted him, seizing him by the neck and shoulder, and that he resisted this assault, seizing the plaintiff and throwing him down upon the floor of the barn and holding him there a short time, whereupon the plaintiff said he would cease fighting, and that the defendant then took the box and carried it home.

The defendant requested the court to charge as follows: "If the jury find that the box was the property of the defendant and that it was left on the premises of Pratt for his accommodation, with the understanding and agreement that the defendant could go there and get it whenever he saw fit to do so, then he had the right to go into the barn and take it, and this would be so notwithstanding any protest or notice on the part of the plaintiff not to do so."

The court charged that neither the defendant's ownership of the box nor the plaintiff's occupancy of the barn was the controlling fact in the case; that a man who owned personal property and was in possession of it, might justify an assault to maintain his possession, but if the possession were in another person the owner could not justify an assault upon that

person to enable the owner to obtain the possession.   A more specific instruction was:

"The box being in the barn which was in the occupancy of the plaintiff, was in the plaintiff's possession to start with, and the defendant could not justify an assault to take it out of that possession thus arising from the fact that it was in the barn which was in the plaintiff's occupancy.   But if the defendant entered the barn without opposition or resistance on the part of the plaintiff, and so being in the barn, obtained complete manual possession and control of the box without committing any assault upon the plaintiff, the box would then be in the possession of the defendant, although still within the plaintiff's barn, and the defendant could then justify an assault upon the plaintiff to keep possession of it, if the plaintiff then undertook to take it away from him." * * *   Further that: "If the defendant has failed to make out his justification, then the plaintiff will be entitled to a verdict, because of the fact, conceded by the defendant, that he laid hands upon the plaintiff.   The real question is whether he was justified in doing this, because of the previous assault of the plaintiff, or for the protection of the personal property in his possession."

The defendant contends that there was error in the court's omission to charge as requested and in the charge as given.

The decisions upon the question here presented are somewhat at variance.   In the notes to *Barnes* v. *Martin,* 82 Am. Dec. 670, Mr. Freeman says: "Whether the owner of personal property, or the one entitled to its possession, has the right under any or all circumstances to retake it, if it is wrongfully taken or detained from him, is an interesting question and one of some practical importance, but strange to say, it is one to which the law as yet gives no certain answer."   It is apparent, however, that many of the decisions differ from each other

only in applying the rules of law to the circumstances of given cases.

*Yale* v. *Seeley et al.,* 15 Vt. 221, supports the defendant's contention. There the defendants went to the plaintiff's land with teams for the purpose of drawing away a quantity of poles lying upon the land. Both parties claimed to own the poles, but the decision went upon the ground that the defendants in fact owned them; and it was held that they had a legal right to enter upon the plaintiff's land to remove their property, and that if the plaintiff attempted to hinder them in the enjoyment of the right, the defendants were justified in using as much force as was necessary to overcome the hindrance. *Sterling* v. *Worden,* 51 N. H. 217, is like *Yale* v. *Seeley* in its facts and sustains the same doctrine.

The defendant also claims *Richardson* v. *Anthony,* 12 Vt. 273, as an authority. In that case the defendant's cattle were in the plaintiff's close without the fault of either party. The plaintiff did not claim to hold them as estrays and, as the court said, he did not and could not have owned them, yet he forbade the defendant's breaking the close to get them and claimed to own them himself; held, that the defendant was justified in breaking the close and in taking his property, but no force was used. Bennett, J., dissented, and Williams, C. J., remarked in the opinion that, "The right of the owner of personal chattels to enter on the possession of another to reclaim property, may depend entirely on the manner in which the possession was obtained." Whether the court would have justified the defendant in using all necessary force to overcome the plaintiff's resistance, if he had resisted, or held that the defendant should have resorted to an action at law, is a matter of conjecture.

This question was before the court in *Kirby* v. *Foster,* 17 R. I. 437, 22 Atl. 1111, and Stiness, J., said: "Unquestion-

ably, if one takes another's property from his possession, without right and against his will, the owner or person in charge may protect his possession, or retake the property, by the use of necessary force.   He is not bound to stand by and submit to wrongful dispossession or larceny when he can stop it, and he is not guilty of assault, in thus defending his right, by using force to prevent his property from being carried away.   But this right of defence and recapture involves two things : *First,* possession by the owner; and, *second,* a purely wrongful taking or conversion, without a claim of right.   If one has intrusted his property to another, who afterwards, honestly, though erroneously, claims it as his own, the owner has no right to retake it by personal force.   If he has, the action of replevin and trover in many cases are of little use.   The law does not permit parties to take the settlement of conflicting claims into their own hands.   It gives the right of defence, but not of redress.   The circumstances may be exasperating; the remedy at law may seem to be inadequate; but still the injured party cannot be arbiter of his own claim.   Public order and the public peace are of greater consequence than a private right or an occasional hardship.   Inadequacy of remedy is of frequent occurrence, but it cannot find its complement in personal violence."

The general rule is that a right of property merely, not joined with the possession, will not justify the owner in committing an assault and battery upon the person in possession, for the purpose of regaining possession, although the possession is wrongfully withheld.   *Bliss* v. *Johnson,* 73 N. Y. 529; *Barnes* v. *Martin,* 15 Wis. 240.

It was also held in *Churchill* v. *Hulbert,* 110 Mass. 42, that though the defendant had an irrevocable license from the plaintiff to enter upon his land and remove certain personal

property that belonged to the defendant, yet if the plaintiff resisted the entry, under a claim that the defendant had already removed all the property that was his, he had no right to use personal violence to overpower the plaintiff's resistance and enforce his claim.

In *Hodgden* v. *Hubbard,* 18 Vt. 504, the plaintiff bought a stove of the defendant through false and fraudulent representations as to his solvency and means of paying for it; held, that he acquired no right either of property or possession in the stove and that the owner was justified in pursuing him and retaking the property in the highway and in using as much force as was necessary in overcoming the purchaser's resistance. In *Johnson* v. *Perry,* 56 Vt. 703, where the plaintiff went into the defendant's millyard and, without right or license, loaded the *defendant's* slabs upon the plaintiff's sled, it was held that the defendant might use such force as was necessary to retake his property. Neither of these cases is authority for the defendant, for in each the taking was wrongful.

In the first trial of *Johnson* v. *Perry,* both parties claimed to own the wood, but the defendant admitted that the plaintiff had peaceably entered his, the defendant's premises, and got possession of it by loading it upon his sled. This Court correctly held in that case, 54 Vt. 459, that if the slabs were the plaintiff's, he, having possession of them, "had the right to maintain that possession against the defendant and every one else"; therefore that decision is not in point for the defendant. In both opinions in *Johnson* v. *Perry* the court referred to *Yale* v. *Seeley* and *Richardson* v. *Anthony* as authorities, which, we think, was inadvertence, for the rule in these cases was applied to different facts from those that appeared in *Johnson* v. *Perry* and went beyond what was necessary for the decision of that case. Judge Redfield, in his opinion in *Dustin*

v. *Cowdry*, 23 Vt. 631, evidently doubted the soundness of the doctrine laid down in the two early cases above cited.

In the present case the plaintiff had not wrongfully taken nor wrongfully withheld the defendant's property when the latter undertook to recover it. The case does not even show a demand for it by the defendant and a refusal by the plaintiff to deliver it, but a declaration by the defendant that the box was his and that he should take it, which was not sufficient to place the plaintiff in the attitude of a wrongdoer and justify the defendant in the use of force and violence to get possession of the chattel. In the opinion of a majority of the Court the rule stated in the Rhode Island case should be applied to the facts in the case at bar, rather than the rule in *Yale* v. *Seeley*.

The request to charge was properly denied and the charge as given was without error. *Yale* v. *Seeley*, so far as it conflicts with the views herein expressed, is no longer to be regarded as authority upon this subject.

*Judgment affirmed.*

*Rowell*, C. J., dissents.