## MARJORIE A. SOUTHER v. NORTHWESTERN TELEPHONE EXCHANGE COMPANY.[1]

June 7, 1912.

Nos. 17,531—(123).

**Telephone line upon street — right of abutting owner.**
An abutting property owner owns the fee to the center of the street, sub-

[1] Reported in 136 N. W. 571.

[Note] Telephone or telegraph line as additional burden on highway, see note in 7 L.R.A. (N.S.) 87.

ject only to the easement of the public therein. Hence the wife of the owner of an abutting homestead has the right to go upon the boulevard upon which the said property abuts, and to remonstrate against, and to use reasonable means to prevent, an apparently unwarranted invasion thereof by the placing of a telephone pole thereon; and in so doing she is not constituted a trespasser.

**Same — injury caused by defendant's servants.**

Where a telephone company had a license from the city to place a telephone pole upon a boulevard upon which a homestead abutted, and its servants, when ordered by the wife of the owner of the homestead to desist from digging a hole in which to place a telephone pole, at first departed, but later returned, and, though the said wife of such owner was in possession, and was still urging that they had no right to do so, proceeded to dig the hole and set up the pole, notwithstanding her objection and resistance, the said company was liable for any injury inflicted upon her by the wanton negligence of its servants during such attempt.

**Charge to jury.**

Instruction upon wanton negligence *held* not misleading.

**Verdict sustained by evidence.**

Evidence *held* sufficient to sustain a verdict for the plaintiff, upon the theory that she was injured through the wanton negligence of the defendant telephone company's servants while they were attempting, notwithstanding her objection and resistance, to set up a telephone pole on the boulevard in front of homestead property owned by her husband.

Action in the district court for Ramsey county to recover $3,000 actual damages, and $10,000 punitive damages, for trespass and personal injuries.

The answer, among other things, alleged that in 1882, in reliance upon the powers and privileges conferred upon it by the statutes of Minnesota and the ordinance of the city of St. Paul, defendant constructed, installed and put in operation in the city of St. Paul a telephone exchange system, consisting of poles, wires, appliances and necessary fixtures for the operation of its telephone business; that in the conduct of its business it was necessary to set its poles and string its wires along Aldine street in front of plaintiff's property; that plaintiff used physical force and threatened and abused the employees of defendant who were engaged in the construction of the line; that defendant had the consent and approval of the city of St.

Paul, and the proper designation of the street for the purpose of erecting its pole thereon; that the pole line was properly constructed and the wires strung thereon so as in nowise to interfere with public travel, and the construction was of no danger or inconvenience to plaintiff; that while defendant's servants were lawfully engaged in extending said line, plaintiff unlawfully and forcibly intruded upon the place where the work was carried on and without cause or provocation unlawfully obstructed the work and assaulted defendant's employees. The reply, among other matters, alleged that no application was made to the city of St. Paul by defendant for permission to erect poles, and no ordinance granting permission to erect poles on the premises was enacted by the common council of the city of St. Paul.

The case was tried before Kelly, J., who at the close of the testimony refused defendant's request to instruct a verdict in its favor, and a jury which returned a verdict in favor of plaintiff for $700. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*C. D. & R. D. O'Brien,* for appellant.

*Briggs, Thygeson & Everall* and *Charles H. Weyl,* for respondent.

PHILIP E. BROWN, J.

Action to recover damages for personal injuries alleged to have been unlawfully and negligently inflicted upon the plaintiff by the defendant's servants. The cause was tried to a jury, and verdict was had in favor of the plaintiff for $700. The defendant appealed from an order denying its alternative motion for judgment notwithstanding the verdict or for a new trial.

The defendant is a Minnesota corporation, operating a system of telephone lines in the city of St. Paul, with poles, etc., located along and in the streets of the said city. The plaintiff was at all times herein stated a married woman residing with her husband, in the said city, on lot 1, block 4, Woodland Park, the said premises being their homestead and owned by him. This lot was bounded on one side by a public street, duly graded and opened, called Aldine street, and there was, at the time of the occurrence complained of in the

complaint, a boulevard on the said street, being a strip of land nine feet wide between the sidewalk and the traveled portion of the street inside the curb line.   There was not, however, any curbing on the street, and the boulevard was unfinished, though the street had been opened and was used for travel.   This boulevard had been seeded with grass and there were six trees thereon, which the plaintiff's husband had planted.

On the trial below evidence was admitted, which, if believed by the jury, was sufficient to warrant a finding of the following facts: An employee of the defendant, in charge of the defendant's servants, who were engaged in erecting telephone poles in the vicinity of the plaintiff's residence, directed one of said servants, on the morning of May 23, 1910, to dig a hole in the boulevard, in which to place a pole, in front of the plaintiff's residence.   After the laborer had dug a hole about one foot deep, at the place indicated, he was discovered by the plaintiff, who ordered him to stop digging, and he complied with such order.   At about one o'clock in the afternoon of the same day the defendant's foreman, with two gangs of workmen, fourteen in all, came to this boulevard.   The men had orders from their superior to dig the hole, or, as explained by one of the defendant's witnesses, "to get a hole dug."   Before the defendant's servants commenced operations, the plaintiff, her husband being absent, objected to the setting of any pole on the boulevard and ordered the defendant's employees to leave the premises.   Instead, however, of complying with such order, such employees started to dig holes in which to place a pole, whereupon the plaintiff, for the purpose of protecting the premises until the return of her husband, who, as was supposed by her, had gone to get an injunction, offered resistance to such efforts by placing a chair over the hole and sitting thereon, jumping into the holes which the men were digging, and, when they moved to another place to dig another hole she would jump into that, and so on.   In addition to these efforts to prevent the digging of the holes and the planting of the pole, the plaintiff, who during most of the time was being assisted by her servant maid, threw earth and water on the men, attempted to fill up the holes which had been partly dug, turned the hose on the workmen, and generally of-

fered such resistance, similar in character to that already detailed, to their efforts to accomplish their purpose. The workmen, in the meantime, persisted in their attempts to dig the holes and to erect the pole, though frequently ordered by the plaintiff to leave the premises. They shoved the pole from one hole to another, thereby frightening the plaintiff by moving it close to her, as if they intended to strike her therewith or to put the pole in on her while she was in a hole.

There was also evidence, properly admitted, sufficient to warrant the jury in concluding, if they found it credible, that one of the defendant's servants, in order to get a pike in a proper position to brace the pole, while the plaintiff, as he then knew, was in one of the holes, pulled the said pike from the hole and pushed it down again, thereby scraping, cutting, and injuring the plaintiff's leg, but that, despite the plaintiff's efforts to prevent the same, a hole sufficient to admit the pole was completed, and, while the plaintiff was bending over it to prevent the insertion of the pole therein, the men made a determined rush with the pole towards such hole, and the plaintiff was struck in the side, either with the pole or with a pike, and she immediately fell unconscious. Evidence was received contradicting some of the matters recited, and also tending to show that, if the plaintiff suffered any injury, it was due to her own acts.

The plaintiff charged in her complaint that the defendant inflicted the said injury upon her person recklessly and negligently, then and there knowing her position. This claim, as well as all claims of the plaintiff concerning her alleged injury and the method of its infliction, the defendant denied, and claimed that while its servants were rightfully on the boulevard, engaged in extending the defendant's telephone line, the plaintiff unlawfully and forcibly intruded upon the place where the work was being done, and without cause unlawfully obstructed the work and assaulted the defendant's employees, all of which acts, it is claimed, were done with the intention of injuring the defendant company and of preventing the lawful extension of its line.

The court instructed the jury, among other things, in effect and without objection, that the defendant was duly authorized by the

common council of the city of St. Paul to enter upon this boulevard and erect its poles thereon, but that the plaintiff, being the wife of the owner of the abutting homestead property, had the right to go upon such boulevard and to remonstrate or take reasonable measures to prevent the defendant from carrying out its purpose of setting a telephone pole thereon, if she had reason to believe that its action was unauthorized and unlawful, and, further, that to such extent she was not a trespasser, and had the right to be on that part of her husband's premises; that she had an interest in the homestead, though the title was in her husband, and that she was entitled to the peaceful and quiet enjoyment thereof; that any invasion of that right would be a wrong against her, which she would have a right to prevent by any proper and lawful means.

The court further instructed the jury that the real question in the case was: Was the plaintiff injured in her person by the negligent conduct of the defendant's servants while endeavoring to place the pole in position, and was the injury wanton? and that negligence which is called wanton is where the person causing the injury at the time sees and knows that the person injured is in a position of peril, and, notwithstanding such knowledge, commits the act causing the injury, though it was in his power to refrain from doing such act, and, further, substantially, that if the jury believed from the evidence that the plaintiff was injured by the pike in the manner she claimed, and that one of the defendant's servants, knowing that she was there in a position of peril, moved the pike and injured her, such would be a wanton injury, for which the defendant would be liable.

The court further charged the jury that if they found that the plaintiff's injuries, if any, were the consequence and result of her affirmative acts in interfering with the men, or in assaulting them, that such injuries would not have occurred unless the plaintiff had so affirmatively interfered with the men, attacked them, put herself in their way; then the verdict should be for the defendant, and that the same result would follow if they found that the plaintiff was not in the exercise of ordinary care, and that by her own acts and

conduct she brought upon herself or procured the injury to herself complained of.

The court also charged, at the defendant's request, as follows: "You are instructed that there is no evidence in this case showing, or tending to show, that the act of the defendant company in setting its poles upon Aldine street, and at the point opposite the property of plaintiff's husband, where the testimony shows the company were engaged in setting them, on the twenty-third day of May, 1910, was an unlawful act, and there is no testimony in this case showing, or tending to show, that the defendant company was a trespasser upon the street at the point at which said poles were set."

This last-mentioned instruction must be taken as a part of the law of the case. It by no means follows, however, that the defendant may not, nevertheless, be held liable. The acts of its servants are not necessarily rendered lawful nor excused by the mere fact that there was no showing that the setting of the pole upon the boulevard was not of itself unlawful, or that the defendant's servants were not trespassers on the boulevard at the time the acts complained of were committed.

The plaintiff's husband was the owner of the fee to this boulevard upon which his premises abutted, subject only to the easement of the public in the same as constituting a part of the street. Sanborn v. Van Duyne, 90 Minn. 215, 224, 96 N. W. 41; Steenerson v. Fontaine, 106 Minn. 225, 119 N. W. 400. The plaintiff, therefore, had a right to go and be upon the boulevard, and from and after the departure of the first man who came to dig, until the arrival of the workmen that came later to plant the pole, she was in exclusive possession, so far as the defendant was concerned.

What, then, was the right of the defendant to send these men to dispossess her, or, rather, by what means was it proper for the defendant to enforce its admitted right to enter upon the boulevard and to plant the pole, as against the plaintiff's protest and proffered resistance? The defendant does not claim to have had any interest in the property, and its only right to enter thereon for the purpose of planting the pole was by virtue of a mere license from the city, and such license did not and could not authorize the defendant to

take possession of the boulevard or otherwise to assert its rights in a violent and unlawful manner. "Taking the remedy into one's own hands is at best an insult to the majesty of the law, and the offense is greatly aggravated whenever it is committed under circumstances evincing deliberation." Jacobs v. Hoover, 9 Minn. 189, 196 (204, 210.)

It may, of course, be argued that this is what the plaintiff attempted to do; but, aside from the question of her right to protect this property from what evidently appeared to her to be an unwarranted invasion, until her husband could invoke the protection of the law, it is sufficient here to say that, unless her acts constituted at least a proximately contributing cause of her injury, her attempt to take the remedy into her own hands is not here involved, however material it might be if she were the defendant in a suit for injury caused to another by such an attempt. The question here is as to the right of the defendant to assert its alleged right in the manner indicated by the evidence. In Miller-Brent v. Stewart, 166 Ala. 657, 51 South. 943, 21 An. Cas. 1149, it was held that the fact that a person had a right of way across the land of another did not justify the former in assaulting the latter in order to enforce such right. "Such is the rule in this state," said the court, "with respect to the recaption of personal property in the possession of another under claim of ownership. Hendrix v. State, 50 Ala. 148. As said by Brickell, C. J., in the Hendrix case, 'the law cannot countenance the substitution of physical violence in the place of these remedies;' i. e., 'the peaceful remedies of the law.' The rule rests upon a denial of the doctrine of might, and erects peaceful methods for the attainment of social justice, regardless of the strength or weakness of the contenders."

Again, in Neilsen v. Hovander, 56 Wash. 93, 105 Pac. 172, 21 An. Cas. 113, it was held that the fact that the plaintiff, at the time of the defendant's assault upon her, was engaged in obstructing a portion of the highway of which she had taken possession and closed, was neither justification nor excuse. "If the respondent did, in fact, close or obstruct a legal highway and deprive the appellants of its use, her wrongful act, even though it created a

public nuisance, did not excuse their acts in taking the law into their own hands, in making a violent assault, and in committing a breach of the peace, to open the road and abate the nuisance." In that case the defendant was attempting to drive through a gate which the plaintiff had built across the alleged highway, and when she attempted to hold the gate he assaulted her. In Churchill v. Hulbert, 110 Mass. 42, 14 Am. Rep. 578, it was held that, though the defendant had an irrevocable license from the plaintiff to enter upon the latter's land, yet, if the plaintiff resisted the entry under a claim of right, the defendant had no right to use personal violence to enforce his claim. There are authorities looking strongly towards the right to enforce one's property rights by force in certain cases. See Williams v. Lubbering, 73 N. J. L. 317, 63 Atl. 90; Yale v. Seely, 15 Vt. 221; Sterling v. Warden, 51 N. H. 217, 12 Am. Rep. 80.

But a close inspection of the cases will, in most instances at least, show that the right thereby accorded to use force was predicated upon a total lack of right or color of right upon the part of the other party. "The general rule," says the court, in Stanley v. Payne, 78 Vt. 235, 62 Atl. 495, 3 L.R.A.(N.S.) 251, 112 Am. St. 911, 6 An. Cas. 501, "is that a right of property merely, not joined with the possession, will not justify the owner in committing an assault and battery upon the person in possession for the purpose of regaining possession, although the possession is wrongfully withheld." Again, in Richardson v. Anthony, 12 Vt. 273, it is declared: "The right of the owner of personal chattels to enter on the possession of another to reclaim property may depend entirely on the manner in which the possession was obtained." In Kirby v. Foster, 17 R. I. 437, 438, 22 Atl. 1111, 14 L.R.A. 317, the doctrine is stated as follows:

"But this right of defense and recapture involves two things: First, possession by the owner; and, second, a purely wrongful taking or conversion without a claim of right. If one has intrusted his property to another, who afterwards honestly, though erroneously, claims it as his own, the owner has no right to retake it by personal force. If he has, the actions of replevin and trover in

many cases are of little use. The law does not permit parties to take the settlement of conflicting claims into their own hands. It gives the right of defense, but not of redress. The circumstances may be exasperating. The remedy at law may seem to be inadequate, but still the injured party cannot be arbiter of his own claim. Public order and the public peace are of greater consequence than a private right or an occasional hardship. Inadequacy of remedy is of frequent occurrence, but it cannot find its complement in personal violence."

Authorities without number might be cited to the same effect, that the law is slow to admit the right of private redress or the private enforcement of legal rights, and we have not found a single well-considered case in which such right, when accorded, has not been guarded with qualifications of the nature above indicated. And we do not think the case before us was one in which either the right or the emergency justified the course resorted to by the defendant's servants. The defendant had a mere license to proceed in an orderly, lawful manner to erect the pole upon this boulevard, and the plaintiff's resistance, under color and claim of right, and, as far as can be gathered from the record, in perfect good faith, did not authorize the forcible invasion of the boulevard. The defendant's remedy by resort to the courts was ample, and there seems to have been no such emergency as would have rendered a delay prejudicial to its rights. The defendant cannot, therefore, claim exemption from liability for the consequences of the acts of its servants, merely because the ultimate purpose they were seeking to accomplish was lawful. "The law will not lend its sanction to an act, otherwise lawful, which is accomplished by unlawful means." Chubbuck v. Cleveland, 37 Minn. 466, 35 N. W. 362, 5 Am. St. 864. This is the governing principle applicable to this case. Moreover, "a grant of powers and privileges by a city council to do certain things does not carry with it any immunity for private injuries which may result directly from the exercise of such powers and privileges." Larson v. Ring, 43 Minn. 88, 90, 44 N. W. 1078, 1079.

As we have seen, when the defendant's servants returned in the afternoon to set the pole, they had knowledge of the plaintiff's

insistence that the company had no right to place the pole on the boulevard, and the plaintiff was in possession, and yet they proceeded, if not to throw her off the boulevard, at least to forcibly assert the defendant's rights in the premises. What they should have done was to have complied with her orders and appealed to the law; and the defendant having, instead of appealing to the law, assumed to be the judge of its own rights, and endeavored, through its servants, to accomplish its purpose by force, with knowledge of the plaintiff's claim and of her position of danger, if, through the wanton negligence of such servants, the plaintiff was injured, we know of no rule of law which will exempt the defendant from liability therefor. Rawitzer v. St. Paul City Ry. Co. 93 Minn. 84, 100 N. W. 664; Sloniker v. Great Northern Ry. Co. 76 Minn. 306, 79 N. W. 168.

It is true that the court was not, perhaps, quite accurate in its instruction to the jury concerning wanton negligence; but we do not think the jury were misled thereby. We are also of the opinion that there was no error in failing to give the defendant's requests, assigned as error, or in modifying the one given.

No claim is made that the verdict is excessive, and on the whole case we find no reason for interfering with the verdict.

Order affirmed.